**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for Plaintiffs* COLLEEN MANGHANE
and ROBERT MANGHANE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEEN MANGHANE; and ROBERT MANGHANE, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN BERNARDINO; SHANNON DICUS; DESERT VALLEY HOSPITAL; and DOES 1-15, inclusive, <br><br> Defendants. | Case No.: 5:25-cv-01107 <br><br> Related Case No.: Case 5:25-cv-00140-WLH-SHK <br><br> *Hon. District Judge Wesley L. Hsu* <br> *Hon. Mag. Judge Shashi H. Kewalramani* <br><br> **PLAINTIFFS' COMPLAINT FOR DAMAGES** <br><br> 1. 42 U.S.C. § 1983 (Unreasonable Search and Seizure – Excessive Force) <br> 2. 42 U.S.C. § 1983 (Denial of Familial Relationship – Fourteenth Amendment) <br> 3. 42 U.S.C. § 1983 (Municipal Liability – Unconstitutional Custom, Practice, or Policy) <br> 4. 42 U.S.C. § 1983 (Municipal Liability – Failure to Train) <br> 5. 42 U.S.C. § 1983 (Municipal Liability – Ratification) <br> 6. Battery <br> 7. Negligence <br> 8. Violation of the Bane Act <br><br> **DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiffs COLLEEN MANGHANE and ROBERT MANGHANE for their Complaint against COUNTY OF SAN BERNARDINO, SHANNON DICUS, DESERT VALLEY HOSPITAL, and DOES 1-15, inclusive, and hereby alleges as follows:

**INTRODUCTION**

1.      This civil rights action arises out of the use of excessive and unreasonable force, including deadly force, against AARON JAMES, deceased, by COUNTY OF SAN BERNARDINO Sheriff's Department ("SBSD") Deputies on April 2, 2024, at or around the 17100 block of Forest Hills Dr., Victorville, County San Bernardino, California.

2.      Decedent, AARON JAMES, suffered serious bodily injury and death, as a direct and proximate result of the actions and inactions of Defendants DESERT VALLEY HOSPITAL and DOES 11-15, inclusive.  Said Defendants are directly liable for Decedent and Plaintiffs' harm for their failed to protect Decedent, failed to provide adequate medical aid to Decedent, failed to monitor Decedent, and failed to secure Decedent allowing him to leave the facility during a mental health crisis.  Defendant DESERT VALLY HOSPITAL is vicariously liable for the conduct of its employees and agents, Defendants DOES 11-15, inclusive.

3.      Decedent suffered serious bodily injury and death, as a direct and proximate result of the actions and inactions of Defendants COUNTY, SBSD Sheriff DICUS, and Deputies, and DOES 1-10, inclusive.  Said Defendants are directly liable for Decedent and Plaintiffs' injuries under federal law pursuant to 42 U.S.C. § 1983.  Defendant COUNTY is also vicariously liable for the

1   acts and omissions of SBSD Deputies and Defendants DOES 1-10, inclusive,

2   pursuant to Cal. Govt. Code §§ 820 and 815(a).

3   4.   Defendant Deputies caused various injuries herein directly, or by

4   integrally participating or failing to intervene in the incident, and by engaging

5   in other acts and/or omissions around the time of the incident.  Specifically,

6   Defendant Deputies shot Decedent while he was not an immediate threat of

7   death or serious bodily injury, causing his death.

8   5.   Prior to this deputy-involved shooting incident, Defendant DICUS

9   and other COUNTY officials failed to adequately train their Defendant

10   Deputies and maintained unconstitutional customs, practices, and policies as

11   described herein. After this deputy-involved shooting incident, Defendant

12   DICUS and other COUNTY officials ratified the Defendant Deputies' uses of

13   excessive and unreasonable force.

14   6.   Defendant COUNTY caused various injuries and are liable under

15   federal law and under the principles set forth in *Monell v. Department of Social*

16   *Services*, 436 U.S. 658 (1978).

17   7.   Plaintiffs seek compensatory from Defendants for violating

18   various rights under the United States Constitution in connection with their

19   use of excessive and unreasonable deadly force. Plaintiffs seek punitive

20   damages from the individual Defendants only.

21

22   **THE PARTIES**

23   8.   At all relevant times, Plaintiffs COLLEEN MANGHANE and

24   ROBERT MANGHANE are individuals residing in County of San Bernardino,

25   California.  The MANGHANE Plaintiffs are the court ordered permanent legal

26   guardians and foster parents of Decedent and bring this action individually

27   and as successors-in-interest to Decedent.  Plaintiffs seek compensatory and

28   punitive damages under federal and state law.  Out of the best interests of

3

1  Decedent, the MANGHANE Plaintiffs had physical custody of Decedent since
2  approximately January 16, 2019, to the time of his death on April 2, 2024.

3      9.    At all relevant times, Decedent AARON JAMES ("JAMES"), 17-
4  years-old, was an individual residing in County of San Bernardino, California.

5      10.   Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is a
6  political subdivision of the State of California that is within this judicial
7  district.    COUNTY is responsible for the actions, omissions, policies,
8  procedures, practices, and customs of its various agents and agencies,
9  including the COUNTY OF SAN BERNARDINO SHERIFF'S
10 DEPARTMENT ("SBSD") and its agents and employees.    At all relevant
11 times, Defendant COUNTY was responsible for assuring that actions,
12 omissions, policies, procedures, practices, and customs of the COUNTY,
13 SBSD, and its employees and agents complied with the laws of the United
14 States and the State of California.    At all relevant times, COUNTY was the
15 employer of the individual SBSD officers, agents, and employees including
16 Defendant Deputies and DOES 1-10.

17     11.   At all relevant times, Defendant SHANNON DICUS ("DICUS")
18 was and is the Sheriff of the SBSD, working for the COUNTY. Defendant
19 DICUS was and is the supervisor of each and every individual deputy,
20 including Defendant Deputies, and SBSD officials. Defendant DICUS
21 proximately caused Plaintiffs' and Decedent's harm by setting and
22 maintaining policy and training standards for SBSD, inadequately training
23 SBSD deputies, and ratifying the use of excessive force on Decedent.
24 Defendant DICUS was acting under the course and scope of his duties as
25 Sheriff for the SBSD and acted under the color of state law. Defendant DICUS
26 was acting with complete authority and the ratification of his principal,
27 Defendant COUNTY.

28

12.    At all relevant times, Defendants DOES 1-8, inclusive ("Deputy DOES"), were duly appointed SBSD Deputies and employees and agents of the COUNTY, subject to the oversight and supervision by COUNTY'S elected and non-elected officials and acted within the course and scope of their employment and under color of law, to wit, under the color of statutes, ordinances, regulations, policies, customs, and usage of Defendant COUNTY, SBSD, and under color of the statutes and regulations of the State of California.  At all relevant times, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every Defendant. At all relevant times, DOES 1-8, inclusive, were acting with the complete authority and ratification of their principal, Defendant COUNTY.

13.    At all relevant times, Defendants DOES 9-10, inclusive ("Supervisor DOES"), are managerial, supervisorial, or policymaking employees of the COUNTY who were acting under color of law within the course and scope of their duties as supervisorial Deputies for the SBSD. DOES 9-10, inclusive, were acting with the complete authority of their principal, Defendant COUNTY.

14.    On information and belief, at all relevant times, Defendant DESERT VALLEY HOSPITAL ("DVH") was and is doing business at 16850 Bear Valley Rd, Victorville, CA 92395, which was acquired by its parent company Prime Healthcare Services, Inc., as a 148-bed acute care hospital. Defendant DVH had the responsibility and obligation to care for and secure Decedent.

15.    At all relevant times, Defendants DOES 11-15, inclusive ("Medical DOES"), were agents and employees of DVH, acted within the course and scope of their employment.  Medical DOES were acting with the complete authority and ratification of their principal, Defendant DVH.

5

Medical DOES directly and proximately caused Plaintiffs' and Decedent's harm for their neglectful conduct as described herein.

16.    Plaintiffs are ignorant of the true names and capacities of Defendant DOES 1-15, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiffs will amend the complaint to allege the true names and capacities of those defendants when the same has been ascertained. Plaintiffs are informed and believe, and on that basis alleges, that DOES 1-10, inclusive, and each of them, are responsible in some manner for the occurrences alleged herein and proximately caused Plaintiffs' damages.

17.    On information and belief, Defendants DICUS, Deputy DOES, Supervisor DOES, and Medical DOES were at all relevant times residents of the County of San Bernardino.

18.    Plaintiffs are informed and believe, and on that basis alleges, that Defendants acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants, or representatives of each other and, in doing the activities alleged herein, acted within the scope of their authority as agents and employees, and with the permission and consent of each other.

19.    Plaintiffs are informed and believe, and on that basis alleges, that at all times mentioned herein all Defendants acted under color of law, statute, ordinance, regulations, customs and usages of the State of California and the COUNTY.

20.    All Defendants who are natural persons, including DICUS and DOES 1-10, inclusive, are sued individually and/or in his/her capacity as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/ or civilian employees, agents, policy makers, and representatives of the COUNTY and the SBSD.

21.    Defendant COUNTY is liable for the nonfeasance and malfeasance of Defendant Deputies and DOES 1-10, inclusive, for the state

law claims herein pursuant to Cal. Govt. Code §§ 815.2(a), 815.6. Further, Defendant Deputies and DOES 1-10, inclusive, are liable for their nonfeasance and malfeasance pursuant to Cal. Govt. Code § 820(a).

## JURISDICTION AND VENUE

22.　The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution.

23.　This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

24.　Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), because all incidents, events, and occurrences giving rise to this action occurred within this district.

25.　On or around September 23, 2024, Plaintiffs served a comprehensive and timely claim for damages with the COUNTY OF SAN BERNARDINO pursuant to applicable sections of the California Government Code.

26.　On November 8, 2024, the COUNTY served a letter of rejection of Plaintiffs' claims.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

27.　Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 26, inclusive, as if fully set forth herein.

28.　Plaintiffs sustained damages, including but not limited to the loss of the familial relationship with their foster son, Decedent. Decedent

7

sustained injuries, including but not limited to pain and suffering, upon information and belief, when Defendant Deputy DOES negligently transported Decedent to DVH, including without providing security and care for Decedent; when Defendant Medical DOES failed to care for and protect Decedent, allowing him to leave the hospital under the throes of a mental health crisis; when Defendant Deputy DOES used excessive and unreasonable force, including deadly force, and employed negligent tactics against Decedent, causing Decedent great bodily injury and death; and Defendants DICUS and Supervisor DOES for their policies, training, and ratification that substantially contributed to the Deputy DOES use of excessive force.

29.    On March 30, 2024, Decedent was placed on a 5150 hold for a serious mental health crisis and transported to DVH, upon information and belief, by Defendant Deputies.

30.    After approximately three days of receiving inadequate medical care, on April 2, 2024, when Decedent was scheduled to be transported from DVH to a mental health facility, still experiencing a mental health crisis, Defendant Medical DOES allowed the 17-year-old Decedent to escape custody.

31.    Upon information and belief, out of fear and distress, Decedent went to the home of his foster sisters, who resided with different foster parents.

32.    Upon information and belief, Defendant Deputies responded to the 17100 block of Forest Hills Drive, Victorville, California, at approximately 12:30 p.m. while Decedent was in the bathroom.

33.    Upon information and belief, there was no crime in progress, the Deputy DOES were not responding to a serious or violent crime, and Deputy DOES did not have any information that any person was harmed or about to be harmed by Decedent.

COMPLAINT FOR DAMAGES

34.    At this time, and all relevant times thereafter, Decedent never verbally threatened any Deputy DOES, Decedent was not an immediate threat to the safety of any person or Deputy DOES, including not an immediate threat of death or serious bodily injury.

35.    Deputy DOES breached the bathroom door and charged toward Decedent, then used force including deadly force against Decedent causing him fear, harm, pain, suffering, and death.

36.    Additional Deputy DOES failed to intervene on the use of excessive and unreasonable force being used on Decedent and were integral participants in the use of excessive and unreasonable force being used on Decedent.

37.    Upon information and belief, at the time that Defendant Deputies were shooting at Decedent, no person or Deputy DOES was about to be harmed by Decedent. Decedent did not pose an immediate threat of death or serious bodily injury to any person or Deputy at the time of the shots.

38.    At the time that Defendant Deputies were shooting at Decedent, Decedent had not verbally threatened any of the Deputy DOES, and Decedent never attempted to assault any of the Deputy DOES or anyone else.

39.    As a result of Defendants' actions and inactions, including Deputy DOES use of excessive and unreasonable force, Decedent experienced serious bodily injury, pain and suffering, and death.  As a result of Defendants' actions and inactions, including Deputy DOES use of excessive and unreasonable force, Plaintiffs suffered the loss of their foster son.

40.    Deputy DOES violated their own policies and basic officer training when they used force, including deadly force against Decedent.

41.    The use of force was excessive and objectively unreasonable under the circumstances, especially because the unarmed Decedent did not pose an immediate threat of death or serious bodily injury to anyone at the

1  time the shooting, the Deputy DOES had reasonable alternatives, the Deputy
2  DOES did not give a warning that deadly force would be used, and the 17-
3  year-old Decedent did not verbally threaten any person or deputy.

4      42.   Plaintiffs seek damages individually for the loss of their foster
5  son, and as success-in-interest of Decedent, for his pre-death pain and
6  suffering, and loss of enjoyment of life.   Plaintiffs also seek reasonable
7  attorneys' fees and costs.

8

9                       **FIRST CLAIM FOR RELIEF**

10    **Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)**

11            (By Plaintiffs against Defendant Deputy DOES)

12     43.   Plaintiffs repeat and re-allege each and every allegation of
13  paragraphs 1 through 42, inclusive, as if fully set forth herein.

14     44.   The Fourth Amendment of the United States Constitution, as
15  applied to State Actors by the Fourteenth Amendment, provides the right of
16  every person to be free from the use of excessive force by Deputies.

17     45.   At all relevant times, Decedent never threatened any Deputy or
18  other person, was not attempting, willing, or intending to inflict harm on
19  anyone.  Defendant Deputy DOES were not responding to a serious or violent
20  crime, Defendant had no information that any person was harmed or that
21  Decedent had harmed any person, and Defendant did not see a crime in
22  progress upon arrival.  Nevertheless, Defendant Deputies used force including
23  deadly force against Decedent, including by repeatedly shotting at Decedent
24  and causing his death.

25     46.   When Defendant Deputies used force, including deadly force
26  against Decedent, Decedent was not an immediate threat to the safety of
27  others, was not an immediate threat of death or serious bodily injury, and there
28

were several less-intrusive alternatives to the use of deadly force available to the Deputy DOES at the time.

47.     Deputy DOES were equipped with less-lethal force options that could have been employed instead of lethal force.  Then the Deputy DOES should have given the Decedent time to comply after less-lethal force was used instead of escalating the situation to using deadly force.  Deputy DOES are trained that they should consider the least intrusive force option, and to only use deadly force when necessary.  The Deputy DOES had the time and ability to attempt voluntary compliance without resorting to physical force through de-escalation and tactical communication but failed to do so.

48.     Additionally, considering the number of Deputy DOES on scene against the sole Decedent, size, age, and relative strength of the Deputy DOES against the sole 17-year-old Decedent, and whether the Deputy DOES had reason to believe that Decedent was mentally ill or emotionally disturbed, the use of force and deadly force against Decedent was objectively unreasonable.

49.     Upon information and belief, the Deputy DOES had the opportunity to provide a verbal warning to Decedent but failed to do so prior to the use of deadly force against Decedent.  This shooting violated Deputy DOES training and standard sheriff's deputy training, including violating training with respect to the use of deadly force and with respect to the use of deadly force.

50.     Defendant Deputies caused various injuries as mentioned herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. Defendants' acts and omissions deprived Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

11

51.    As a direct result of the aforesaid acts and omissions of Defendant Deputies, Decedent suffered great physical and mental injury prior to his death, loss of life, and loss of enjoyment of life.

52.    The conduct of Defendant Deputies alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and warrants the imposition of exemplary and punitive damages in an amount according to proof.

53.    Defendant Deputy DOES were acting under color of state law and within the course and scope of their employment as law enforcement Deputies for the COUNTY.

54.    Plaintiffs seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life, under this claim.  Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## SECOND CLAIM FOR RELIEF

### Substantive Due Process (42 U.S.C. § 1983)

(By Plaintiffs against Defendant Deputy DOES)

55.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 54 of this Complaint with the same force and effect as if fully set forth herein.

56.    The Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees all persons the right to be free from unlawful state interference with their familial relations.

57.    Defendant Deputies intentionally shot the 17-year-old Decedent, causing his death, while he was suffering a mental health crisis, when he was not an immediate threat of death or serious bodily injury to any person at the time, and was alone in a bathroom.  Upon information and belief, Defendants

failed to give Decedent a verbal warning before they used deadly force against him and took his life.  There were less-intrusive means available to the Deputy DOES besides the use of deadly force, including de-escalation and tactical communication to attempt voluntary compliance, and upon information and believe, the Deputy DOES failed to deploy these less-intrusive techniques and/or failed to allow Decedent the time to comply thereafter.

58.   The use of excessive and objectively unreasonable deadly force by Defendant Deputies as alleged above, shocks the conscience, was in deliberate indifference and reckless disregard for Decedent's and Plaintiff's rights, and displayed a purpose to harm Decedent unrelated to a legitimate law enforcement objective.  In so doing, Defendant Deputies' conduct constitutes a violation of Plaintiffs' and Decedent's Fourteenth Amendment Substantive Due Process right to be free from unlawful state interference with their familial relationship with their son and beloved family member.

59.   Defendant Deputies' conduct was malicious, oppressive and in reckless disregard for the rights and safety of Decedent and Plaintiffs and warrants the imposition of exemplary and punitive damages as to Defendant Deputies.

60.   As a direct result of the death of Decedent, Plaintiffs has suffered the loss of Decedent's love, care, comfort, society, companionship, assistance, protection, affection, moral support, financial support, and loss of services of Decedent.  Plaintiffs seek wrongful death damages under this claim.

61.   Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

/ / /

/ / /

13

COMPLAINT FOR DAMAGES

1

## **THIRD CLAIM FOR RELIEF**

2

**Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C.**

3

**§ 1983)**

4

(By Plaintiffs against COUNTY, DICUS, and Supervisor DOES)

5    62.    Plaintiffs repeat and re-allege each and every allegation of

6    paragraphs 1 through 61, inclusive, as if fully set forth herein.

7    63.    Defendants Deputy DOES acted under color of state law and

8    within the course and scope of their employment when they intentionally shot

9    and killed Decedent without there being an immediate threat of death or

10   serious bodily injury, thereby using excessive and unreasonable force against

11   Decedent, and Defendants Supervisor DOES and Sheriff DICUS acted under

12   color of state law and within the course and scope of their employment by

13   maintaining unconstitutional, customs, practices, and policies.  At all relevant

14   times, the Deputy DOES were not responding to a violent crime, there was no

15   crime in progress with Deputy DOES arrived, Decedent did not verbally

16   threaten any person or officer, and did not harm any person or officer.

17   64.    Defendant Deputies acted pursuant to an expressly adopted or

18   fiscal policy or longstanding practice or custom of the Defendants COUNTY,

19   DICUS and Supervisor DOES.

20   65.    On information and belief, Defendant Deputies were not

21   disciplined, reprimanded, retrained, provided additional training, suspended,

22   or otherwise penalized in connection with the deprivation of Plaintiffs' or

23   Decedent's rights.

24   66.    Defendant COUNTY, DICUS and Supervisor DOES, together

25   with other COUNTY policymakers and supervisors, maintained, inter alia, the

26   following unconstitutional customs, practices, and policies:

27

28

(a)   Using excessive and objectively unreasonable force, including deadly force on unarmed persons who do not pose a risk of immediate death or serious bodily injury to others.

(b)   Providing inadequate training regarding the use of force, including the use of less-lethal force, and deadly force.

(c)   Using deadly force against a person suffering from a mental health crisis.

(d)   Employing and retaining as Deputies, individuals such as Defendant Deputies who upon information and belief, Defendants COUNTY, DICUS and DOES 9-10, inclusive, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force.

(e)   Inadequately supervising, training, controlling, assigning, and disciplining COUNTY law enforcement Deputies, and other personnel, including Defendant Deputies who COUNTY knew or in the exercise of reasonable care should have known, had the aforementioned propensities or character traits.

(f)   Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by law enforcement Deputies of the COUNTY.

(g)   Announcing that unjustified uses of force are "within policy," including shootings that were later determined in court to be unconstitutional.

(h)   Even where uses of force are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the Deputies involved.

(i)   Failing to adequately discipline COUNTY law enforcement Deputies for the above-mentioned categories of misconduct, including

inadequate discipline and "slaps on the wrist," discipline that is so slight as to be out of proportion with the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

(j)     Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which Deputies do not report other Deputies' errors, misconduct, or crimes.   Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officer's wrongdoing.

(k)     Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of law enforcement shootings, including failing to discipline, retrain, investigate, terminate, and recommend deputies for criminal prosecution who participate in shootings of unarmed people.

(l)     Otherwise covering up police misconduct.

67.     On information and belief, the COUNTY has deficient policies with respect to the use of force, including deadly force.  As a result of deficient polices, the Deputy Defendants shot Decedent while Decedent was alone in a bathroom, not threatening any person, and while not an immediate threat of death or serious bodily injury, resulting in the injuries claimed in this lawsuit.

68.     Defendant COUNTY, DICUS and Supervisor DOES, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged herein.  Despite having knowledge as stated above, these Defendant condoned, tolerated and through actions and inactions thereby ratified such policies.   Said Defendant also acted with deliberate indifference to the

16

1    foreseeable effects and consequences of these policies with respect to the

2    constitutional rights of Plaintiffs and other individuals similarly situated.

3        69.    By perpetrating, sanctioning, tolerating, and ratifying the

4    outrageous conduct and other wrongful acts, Defendants COUNTY, DICUS

5    and Supervisor DOES, acted with intentional, reckless, and callous disregard

6    for the Plaintiffs' constitutional rights.  Furthermore, the policies, practices,

7    and customs implemented, maintained, and tolerated by Defendants

8    COUNTY, DICUS and Supervisor DOES, were affirmatively linked to and

9    were a significantly influential force behind Decedent's and Plaintiffs' harm.

10       70.    By reason of the aforementioned acts and omissions, and as a

11   direct and proximate result of the aforementioned unconstitutional policies

12   and customs, Decedent endured substantial pain and suffering, loss of

13   enjoyment of life, and loss of life, and Plaintiffs have suffered the loss of their

14   foster son and will continue to be deprived for the remainder of their lives.

15       71.    The acts of each of Defendants DICUS and Supervisor DOES,

16   were willful, wanton, oppressive, malicious, fraudulent, and extremely

17   offensive and unconscionable to any person of normal sensibilities, and

18   therefore warrants imposition of exemplary and punitive damages as to

19   Defendants DICUS and Supervisor DOES.

20       72.    On information and belief, the following are examples of cases

21   where SBSD Deputies were not disciplined, reprimanded, retrained,

22   suspended, or otherwise penalized in connection with the underlying acts

23   giving rise to the below lawsuits, which indicate that the COUNTY routinely

24   ratifies such behavior, fails to train its Deputies, and maintains a practice of

25   allowing such behavior:

26       a.    In *Estate of Merlin Factor v. County of San Bernardino, et al.*,

27   case number 5:14-cv-01289-DMG-AGR(x), plaintiffs argued that the use of

28   deadly force against the unarmed Merlin Factor in 2013 was unreasonable.

1    The police reports showed that Mr. Factor was unarmed, and the parties

2    settled the case for a high six-figure settlement.  Upon information and

3    belief, no deputy was retained, provided additional training, disciplined,

4    suspended, or terminated as a result of this incident.

5          b.     In *Archibald v. County of San Bernardino*, case number 5-16-

6    cv-1128, plaintiff argued that the involved San Bernardino County sheriff's

7    deputy used deadly force against the unarmed Nathanael Pickett in 2015

8    when he posed no immediate threat.  In 2018, the jury in that case returned

9    a $33.5 million verdict against Defendant County of San Bernardino and its

10   involved deputy, Kyle Woods.  In the Archibald case, there was video

11   footage that captured the shooting incident.  However, SBSD accepted

12   Woods' version over what was depicted in the video and rejected the

13   objective evidence.  Woods continued to work at SBSD after the Archibald

14   shooting, and then he was involved in another shooting.  On January 14,

15   2018, after the Archibald shooting incident, Woods shot Ryan Martinez

16   after Mr. Martinez's vehicle flipped over and while Mr. Martinez was still

17   inside the vehicle.  The contentions against Woods were that he shot Mr.

18   Martinez without giving him commands, without warning, and when there

19   was no imminent or immediate threat of death or serious bodily injury to

20   anyone.  After the Martinez shooting, Woods remained employed by the

21   SBSD.  That the SBSD retained Woods after he shot Ryan Martinez raises

22   an inference that the County retained and hired deputies who demonstrated

23   a propensity for abusing their authority.

24         c.     In *T.M. (Phillips) v. County of San Bernardino, et al.*, case

25   number 5:18- cv-2532-R-PLA, plaintiff alleged that the shooting of Lajuana

26   Phillips who was driving her vehicle despite not posing an immediate threat

27   of death or serious bodily injury was excessive and unreasonable.  In 2018,

28   the parties settled the case for a seven-figure settlement.  Upon information

and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

d.    In *Ronero v. County of San Bernardino*, case number 5:16-cv-02655, the COUNTY settled with a man involved in non-fatal deputy shooting that resulting in serious injuries including the loss of the victim's left leg.  The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

e.    In *Young v. County of San Bernardino, et al.*, case number 5:15-CV- 01102-JGB-SP, plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable.  In 2016 a jury agreed and awarded a high six-figure verdict in plaintiff's favor.  Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

f.    In *M.A., et al. v. County of San Bernardino, et al.*, case number 8:20-c-00567-JFW-SHK, plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning, and when Mr. Allen was not an immediate threat of death or serious bodily injury.  In 2021, the parties settled the case for a seven-figure settlement.  Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

g.    In *Brown v. County of San Bernardino*, case number 5:20-cv-01658, Mr. Brown alleged that deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle.  In 2021, the parties settled the case for a high six-figure settlement.  Upon information and belief, no deputy was

COMPLAINT FOR DAMAGES

retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

h.     In *Gomez v. County of San Bernardino*, case number 5:13-cv-2185, a lawsuit involving the non-fatal shooting of an unarmed 31-year-old man in his apartment complex after a vehicle pursuit.

i.     In *Estate of Allen Kephart v. County of San Bernardino*, CIL VDS 1110314, San Bernardino Superior Court, a lawsuit involving an incident wherein multiple deputies used excessive force against a 43-year-old man, which resulted in death.

j.     In *Elio Carrion v. County of San Bernardino*, case number 2:06-cv-8210, a lawsuit involving a non-fatal shooting of a passenger.

k.     In *Sofflet v. County of San Bernardino*, case number 5:18-cv-279, wherein a seven-figure settlement was reached regarding the in-custody death of a 34-year-old woman.

l.     Numerous prior incidents at County San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies' involving violations of 42 USC 1983.  (Case Nos. 5:15-cv-02515-JGB-DTB).  Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by COUNTY correctional officers.  Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC.  (Case No. 14-2171-JGB-SP).  The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

COMPLAINT FOR DAMAGES

73.   Within a month prior to this incident, SBSD deputies shot and killed another teenage boy who was experiencing mental health crises. On March 9, 15-year-old Ryan Gainer, who was autistic, was fatally shot in Apple Valley after Deputies Wyatt Eisenbrey and Brandon Clancy officers responded to the family home.

74.   Accordingly, Defendants COUNTY, DICUS and Supervisor DOES, each are liable for compensatory damages under 42 U.S.C. § 1983.

75.   Plaintiffs bring this claim as successor-in-interest to Decedent and seek survival damages.  Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability for Failure to Train (42 U.S.C. §1983)

(By Plaintiffs against COUNTY, DICUS and Supervisor DOES)

76.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 75 of this Complaint with the same force and effect as if fully set forth herein.

77.   At all relevant times, Defendants DICUS and DOES 1-10, inclusive, acted under color of law and within the course and scope of their employment with the COUNTY.

78.   The acts of Defendant Deputies as described herein, deprived Decedent and Plaintiffs of their particular rights under the United States Constitution, including when they intentionally shot Decedent without justification, causing his death.

79.   On information and belief, Defendant COUNTY failed to properly and adequately train Defendant Deputies including with regard to the use of deadly force, especially with regard to a subject suffering a mental health crisis.  The training policies of Defendants COUNTY, DICUS and Supervisor

1 | DOES were not adequate to train its deputies to handle the usual and recurring

2 | situations with which they must deal.

3 |       80.    On information and belief, the COUNTY failed to train their

4 | deputies not to shoot at children suffering a mental health crisis while they are

5 | not an immediate threat of death or serious bodily injury. As a result of this

6 | deficient policy and deficient training, the deputy Defendants shot Decedent,

7 | resulting in the injuries claimed in this lawsuit.

8 |       81.    The training policies of Defendant COUNTY were not adequate

9 | to train its Deputies to handle the usual and recurring situations with which

10 | they must deal, including de-escalation techniques, tactical communication,

11 | tactical positioning, and both the use of less than lethal and lethal force.

12 |       82.    Defendants COUNTY, DICUS and Supervisor DOES were

13 | deliberately indifferent to the obvious consequences of its failure to train its

14 | Deputies adequately, including with respect to the use of force.

15 |       83.    The failure of Defendants COUNTY, DICUS and Supervisor

16 | DOES to provide adequate training caused the deprivation of Plaintiffs' and

17 | Decedent's rights by Defendant Deputies; that is, Defendants' failure to train

18 | is so closely related to the deprivation of Plaintiffs' and Decedent's rights as

19 | to be the moving force that caused the ultimate injury.

20 |       84.    The following are only a few examples of cases where the

21 | COUNTY failed to train its Deputies, and the involved Deputies were not

22 | disciplined, reprimanded, retrained, suspended, or otherwise penalized in

23 | connection with the underlying acts giving rise to the below lawsuits, which

24 | indicates that Defendant COUNTY failed to adequately train its Deputies,

25 | more specifically the failure to train with regard to the use of force:

26 |       a.    In *Estate of Merlin Factor v. County of San Bernardino, et al.*,

27 | case number 5:14-cv-01289-DMG-AGR(x), plaintiffs argued that the use of

28 | deadly force against the unarmed Merlin Factor in 2013 was unreasonable.

COMPLAINT FOR DAMAGES

The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.  Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

b.       In *Archibald v. County of San Bernardino*, case number 5-16-cv-1128, plaintiff argued that the involved San Bernardino County sheriff's deputy used deadly force against the unarmed Nathanael Pickett in 2015 when he posed no immediate threat.  In 2018, the jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved deputy, Kyle Woods.  In the Archibald case, there was video footage that captured the shooting incident.  However, SBSD accepted Woods' version over what was depicted in the video and rejected the objective evidence.  Woods continued to work at SBSD after the Archibald shooting, and then he was involved in another shooting.  On January 14, 2018, after the Archibald shooting incident, Woods shot Ryan Martinez after Mr. Martinez's vehicle flipped over and while Mr. Martinez was still inside the vehicle.  The contentions against Woods were that he shot Mr. Martinez without giving him commands, without warning, and when there was no imminent or immediate threat of death or serious bodily injury to anyone.  After the Martinez shooting, Woods remained employed by the SBSD.  That the SBSD retained Woods after he shot Ryan Martinez raises an inference that the County retained and hired deputies who demonstrated a propensity for abusing their authority.

c.       In *T.M. (Phillips) v. County of San Bernardino, et al.*, case number 5:18- cv-2532-R-PLA, plaintiff alleged that the shooting of Lajuana Phillips who was driving her vehicle despite not posing an immediate threat of death or serious bodily injury was excessive and unreasonable.  In 2018, the parties settled the case for a seven-figure settlement.  Upon information

and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

d.     In *Ronero v. County of San Bernardino*, case number 5:16-cv-02655, the COUNTY settled with a man involved in non-fatal deputy shooting that resulting in serious injuries including the loss of the victim's left leg.  The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

e.     In *Young v. County of San Bernardino, et al.*, case number 5:15-CV- 01102-JGB-SP, plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable.  In 2016 a jury agreed and awarded a high six-figure verdict in plaintiff's favor.  Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

f.     In *M.A., et al. v. County of San Bernardino, et al.*, case number 8:20-c-00567-JFW-SHK, plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning, and when Mr. Allen was not an immediate threat of death or serious bodily injury.  In 2021, the parties settled the case for a seven-figure settlement.  Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

g.     In *Brown v. County of San Bernardino*, case number 5:20-cv-01658, Mr. Brown alleged that deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle.  In 2021, the parties settled the case for a high six-figure settlement.  Upon information and belief, no deputy was

COMPLAINT FOR DAMAGES

retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

h.    In *Gomez v. County of San Bernardino*, case number 5:13-cv-2185, a lawsuit involving the non-fatal shooting of an unarmed 31-year-old man in his apartment complex after a vehicle pursuit.

i.    In *Estate of Allen Kephart v. County of San Bernardino*, CIL VDS 1110314, San Bernardino Superior Court, a lawsuit involving an incident wherein multiple deputies used excessive force against a 43-year-old man, which resulted in death.

j.    In *Elio Carrion v. County of San Bernardino*, case number 2:06-cv-8210, a lawsuit involving a non-fatal shooting of a passenger.

k.    In *Sofflet v. County of San Bernardino*, case number 5:18-cv-279, wherein a seven-figure settlement was reached regarding the in-custody death of a 34-year-old woman.

l.    Numerous prior incidents at County San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies' involving violations of 42 USC 1983.  (Case Nos. 5:15-cv-02515-JGB-DTB).  Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by COUNTY correctional officers.  Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC.  (Case No. 14-2171-JGB-SP).  The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

COMPLAINT FOR DAMAGES

85.    As a direct and proximate result of the aforementioned conduct, Decedent endured severe pain and suffering loss of enjoyment of life, and loss of life.    Further, as a direct and proximate result of the aforementioned conduct, Plaintiffs endured the loss of their foster child, including being deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural life.

86.    Accordingly, Defendants COUNTY, DICUS and Supervisor DOES are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

87.    Plaintiffs bring this claim as successor-in-interest to Decedent and seek survival damages.    Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(By Plaintiffs against COUNTY, DICUS and Supervisor DOES)

88.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 87 of this Complaint with the same force and effect as if fully set forth herein.

89.    At all relevant times, Defendants DICUS and DOES 1-10, inclusive, acted under color of law and within the course and scope of their employment with the COUNTY.

90.    The acts of Defendant Deputies as described herein, deprived Decedent and Plaintiffs of their particular rights under the United States Constitution, including when they intentionally shot Decedent without justification, causing his death.

91.    Upon information and belief, a final policymaker, including Defendants DICUS and Supervisor DOES, acting under color of law, has a history of ratifying the unconstitutional and unreasonable uses of force, including deadly force.

92.    Upon information and belief, a final policymaker for the COUNTY, acting under color of law, who had final policymaking authority concerning the acts of Defendant Deputies and the bases for them, ratified the acts and omissions of Defendant Deputies and the bases for them.    Upon information and belief, the final policymaker knew of and specifically approved of Defendants' acts, specifically approving the SBSD Deputies' shooting of the 17-year-old boy suffering a mental health crisis when he was not an immediate threat of death or serious bodily injury.

93.    On information and belief, the official policies with respect to the incident are that Deputies are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the Deputies or others.    The Deputies' actions deviated from these official policies because Decedent did not pose an immediate threat of death or serious bodily injury to the involved Deputies or anyone else.

94.    Upon information and belief, a final policymaker(s) has determined (or will determine) that the acts of Defendant Deputies were "within policy."

95.    The following are only a few examples of cases where SBSD Deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicate that Defendant COUNTY routinely ratifies such behavior:

a.    In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), plaintiffs argued that the use of

deadly force against the unarmed Merlin Factor in 2013 was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

b.      In *Archibald v. County of San Bernardino*, case number 5-16-cv-1128, plaintiff argued that the involved San Bernardino County sheriff's deputy used deadly force against the unarmed Nathanael Pickett in 2015 when he posed no immediate threat. In 2018, the jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved deputy, Kyle Woods. In the Archibald case, there was video footage that captured the shooting incident. However, SBSD accepted Woods' version over what was depicted in the video and rejected the objective evidence. Woods continued to work at SBSD after the Archibald shooting, and then he was involved in another shooting. On January 14, 2018, after the Archibald shooting incident, Woods shot Ryan Martinez after Mr. Martinez's vehicle flipped over and while Mr. Martinez was still inside the vehicle. The contentions against Woods were that he shot Mr. Martinez without giving him commands, without warning, and when there was no imminent or immediate threat of death or serious bodily injury to anyone. After the Martinez shooting, Woods remained employed by the SBSD. That the SBSD retained Woods after he shot Ryan Martinez raises an inference that the County retained and hired deputies who demonstrated a propensity for abusing their authority.

c.      In *T.M. (Phillips) v. County of San Bernardino, et al.*, case number 5:18- cv-2532-R-PLA, plaintiff alleged that the shooting of Lajuana Phillips who was driving her vehicle despite not posing an immediate threat of death or serious bodily injury was excessive and unreasonable. In 2018,

the parties settled the case for a seven-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

       d.    In *Ronero v. County of San Bernardino*, case number 5:16-cv-02655, the COUNTY settled with a man involved in non-fatal deputy shooting that resulting in serious injuries including the loss of the victim's left leg. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

       e.    In *Young v. County of San Bernardino, et al.*, case number 5:15-CV- 01102-JGB-SP, plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable. In 2016 a jury agreed and awarded a high six-figure verdict in plaintiff's favor. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

       f.    In *M.A., et al. v. County of San Bernardino, et al.*, case number 8:20-c-00567-JFW-SHK, plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning, and when Mr. Allen was not an immediate threat of death or serious bodily injury. In 2021, the parties settled the case for a seven-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

       g.    In *Brown v. County of San Bernardino*, case number 5:20-cv-01658, Mr. Brown alleged that deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was

retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

      h.    In *Gomez v. County of San Bernardino*, case number 5:13-cv-2185, a lawsuit involving the non-fatal shooting of an unarmed 31-year-old man in his apartment complex after a vehicle pursuit.

      i.    In *Estate of Allen Kephart v. County of San Bernardino*, CIL VDS 1110314, San Bernardino Superior Court, a lawsuit involving an incident wherein multiple deputies used excessive force against a 43-year-old man, which resulted in death.

      j.    In *Elio Carrion v. County of San Bernardino*, case number 2:06-cv-8210, a lawsuit involving a non-fatal shooting of a passenger.

      k.    In *Sofflet v. County of San Bernardino*, case number 5:18-cv-279, wherein a seven-figure settlement was reached regarding the in-custody death of a 34-year-old woman.

      l.    Numerous prior incidents at County San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies' involving violations of 42 USC 1983.  (Case Nos. 5:15-cv-02515-JGB-DTB).  Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own30awsuitt (5:15-cv-02513-JGB-DTB), going back to years of torture by COUNTY correctional officers.  Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC.  (Case No. 14-2171-JGB-SP).  The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

COMPLAINT FOR DAMAGES

96.   By reason of the aforementioned acts and omissions, Defendants COUNTY, DICUS and Supervisor DOES are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

97.   Plaintiffs bring this claim as successor-in-interest to Decedent and seek survival damages.  Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Battery (Cal. Govt. Code §§ 815, 820 and California Common Law)

(Plaintiffs against Defendant Deputy DOES, directly; and COUNTY vicariously)

98.   Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 97 of this Complaint with the same force and effect as if fully set forth herein.

99.   At all relevant times, Defendant Deputy DOES were working as Deputies for the SBSD and were acting within the course and scope of their duties as Deputies for the COUNTY.

100.   When Defendant Deputies were detaining Decedent, Decedent was not threatening any person, and Decedent never verbally threatened any Defendant Deputies.

101.   Decedent was not attempting, willing, or intending to inflict harm on anyone.  Defendants were not responding to a serious or violent crime, Defendants did not witness a crime in progress upon arrival, Defendants had no information that anyone had been hurt or injured or that Decedent had hurt or injured someone.  Decedent was alone in a bathroom when Defendant Deputies used force against Decedent, including when they repeatedly shot Decedent without justification.

102.   The shooting was excessive and objectively unreasonable, especially because throughout the incident, Decedent presented no immediate

31

threat to the safety of the Deputies or others, including not an immediate threat of death or serious bodily injury to any Deputy or other person.  Further, Defendants' shooting and use of force violated their training, standard law enforcement training, and generally accepted law enforcement standards.

103.  Defendant Deputies had no legal justification for using force against Decedent, and the use of force was unreasonable and non-privileged. Moreover, Decedent did not knowingly or voluntarily consent to the use of force against him.

104.  Defendant Deputies caused various injuries as mentioned herein and are liable either because they directly harmed Decedent or by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident.  Defendants' acts and omissions resulted in harmful and offensive touching of Plaintiffs.

105.  As a direct and proximate result of the aforesaid acts and omissions of Defendant Deputies, Decedent suffered great physical and mental injury, as well as fear and emotional distress related to his physical injuries, pain and suffering, humiliation, anguish, and death.

106.  The conduct of Defendant Deputies was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Decedent, entitling Plaintiffs to an award of exemplary and punitive damages, which Plaintiffs seeks under this claim.

107.  Defendant Deputies are directly liable for their actions and inactions pursuant to Cal. Govt. Code § 820(a).

108.  The Defendant COUNTY is vicariously liable for the wrongful acts and omissions of Defendant Deputies pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

109.  Plaintiffs seek compensatory damages and bring this wrongful death claim as successor-in-interest to Decedent against Defendant and seeks survival and wrongful death damages under this claim.  Plaintiffs also seek reasonable costs and funeral and burial expenses on this claim.

**SEVENTH CLAIM FOR RELIEF**

**Negligence (Cal. Govt. Code §§ 815, 820 and California Common Law)**

(Plaintiffs against Defendant Deputy DOES and Medical DOES, directly; and COUNTY and DVH vicariously)

110.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 109 of this Complaint with the same force and effect as if fully set forth herein.

111.  After taking a person into custody, law enforcement officers have a duty and responsibility to care for, protect, and transport that person to the appropriate facility.  Further, law enforcement officers have a duty and responsibility to act reasonably by not transferring care to a facility with inadequate personnel, equipment/facilities, and education to care for the subject.  Upon information and belief, Defendant Deputy DOES breached their duty of care.

112.  Upon accepting patient into their care, Defendants DVH and Medical DOES have a duty and responsibility to provide adequate care, protection, and security for their patient, provide appropriate facilities and personnel for adequate evaluation and treatment.  Further, when accepting a patient on a 5150 hold, a medical facility and personnel, including Defendants DVH and Medical DOES have a duty and responsibility to provide adequate mental health treatment.  Defendants DVH and Medical DOES breached their duty of care, failed to adequately treat Decedent during approximately three

days under their custody and responsibility, and allowed Decedent to escape custody during a mental health crisis.

113. Sheriff's Deputies, including Defendant Deputy DOES, have a duty to use reasonable care to prevent harm or injury to other. This duty includes but is not limited to the following: using appropriate tactics, giving appropriate commands, giving warnings, allowing time for the subject to understand and comply with appropriate commands and warnings, not using any force unless necessary, using less-intrusive options, acting objectively reasonable when using deadly force, and only using deadly force as a last resort. Defendant Deputy DOES breached their duty of care.

114. The actions and inactions of Defendant Deputy DOES were negligent and reckless, including but not limited to:

        a)    Defendants' failure to constitutionally respond to Decedent.

        b)    Defendants' failure to properly and adequately care for, protect, and transport Decedent.

        c)    Defendants' failure to properly and adequately assess the need to use force against Decedent.

        d)    Defendants' negligent tactics and handling of the situation with Decedent, including the failure to de-escalate the situation.

        e)    Defendants' negligent use of force against Decedent.

        f)    Defendants' failure to provide prompt medical care to Decedent.

        g)    Negligent tactics and handling of the situation with Decedent, including pre-shooting negligence and the failure to give appropriate commands and warnings.

        h)    Defendants' failure to properly train and supervise employees.

COMPLAINT FOR DAMAGES

i)    Defendants' failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Decedent.

j)    Defendants' negligent handling of evidence and witnesses.

k)    Defendants' failure to properly report the incident.

l)    Defendants' failure to de-escalate the situation and use proper communication and commands.

115.  As a result of their misconduct, Defendant Deputy DOES are liable for Plaintiffs' and Decedent's injuries on this claim, either because they were integral participants in the aforementioned conduct, or because they failed to intervene to prevent these violations.

116.  As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Decedent suffered the loss of his life, and Plaintiffs have been deprived of the life-long love, companionship, comfort, care, support, society, and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural life.

117.  Defendant Deputies are directly liable for their actions and inactions pursuant to Cal. Govt. Code § 820(a).

118.  The Defendant COUNTY is vicariously liable for the wrongful acts of Defendant Deputies and DOES 1-8, inclusive, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

119.  Plaintiffs seek compensatory damages and bring this wrongful death claim as successor-in-interest to Decedent against Defendants and seeks survival and wrongful death damages under this claim.  Plaintiffs also seek reasonable costs and funeral and burial expenses on this claim.

COMPLAINT FOR DAMAGES

**EIGHTH CLAIM FOR RELIEF**

**Violation of the Bane Act (Cal. Civil Code § 52.1)**

(Plaintiffs against Defendant Deputy DOES, directly; and COUNTY vicariously)

120.   Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 119 of this Complaint with the same force and effect as if fully set forth herein.

121.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person, including a police officer, from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion, including by the use of unconstitutionally excessive force.  Conduct that violates the Fourth Amendment, including the use of excessive force, violates the Bane Act when performed with specific intent to deprive others of their civil rights, which can be inferred by a reckless disregard for the person's civil rights.

122.   Defendant Deputies while working for the COUNTY and acting within the course and scope of their duties as Deputies and under color of law, intentionally committed, and attempted to commit acts of violence against Decedent, including by intentionally and repeatedly shooting Decedent and otherwise using unreasonable force against Decedent.  This shooting was excessive and objectively unreasonable and especially reckless because Decedent did not pose an immediate threat of death or serious bodily injury to any person.  Further, the Defendants' shooting and use of force violated basic law enforcement training, and generally accepted law enforcement standards. Defendants' shot and killed Decedent without any legal justification.

123.  When Defendant Deputies repeatedly shot Decedent while Decedent was not an immediate threat of death or serious bodily injury, they interfered with Decedent's constitutional rights to be free from unreasonable

searches and seizures, to equal protection of the laws, to be free from state actions that shock the conscience, and to life, liberty, and property.

124. On information and belief, Defendant Deputies intentionally and spitefully committed the above acts to discourage or prevent Decedent from exercising his civil rights, or from enjoying such rights, which he was and is fully entitled to enjoy. Defendant Deputies intentionally interfered with the above constitutional rights of Decedent, and as alleged herein, which can be demonstrated by Defendants' reckless disregard for Decedent's constitutional rights.

125. On information and belief, Decedent reasonably believed and understood that the violent acts committed by Defendant Deputies were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

126. The conduct of Defendant Deputies was a substantial factor in causing Decedent's harm, loss, injury, and damages.

127. The Defendant COUNTY is vicariously liable for the wrongful acts of Defendant Deputies pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

128. Defendants DICUS and DOES 9-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

129. The conduct of Defendant Deputies was malicious, wanton, oppressive, and accomplished with a conscious disregard for Decedent's rights, justifying an award of exemplary and punitive damages as to Defendant Deputies.

COMPLAINT FOR DAMAGES

1    130.  Plaintiffs seek compensatory damages for the violations of their

2  and Decedent's rights.   Plaintiffs also seek punitive damages, costs, and

3  attorney fees under California Civil Code section 52 *et seq*. as to this claim.

4

5  / / /

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs COLLEEN MANGHANE and ROBERT MANGHANE request entry of judgment in their favor against COUNTY OF SAN BERNARDINO; Sheriff DICUS, DESERT VALLEY HOSPITAL; and DOES 1-15, inclusive, as follows:

1.      For compensatory damages, according to proof at trial, under federal and State law.

2.      For punitive and exemplary damages against the individual defendants in an amount to be proven at trial.

3.      For statutory damages.

4.      For reasonable attorneys' fees including litigation expenses.

5.      For costs of suit and interest incurred herein.

6.      For such other and further relief as the Court may deem just and proper.

DATED: May 7, 2025              **THE LAW OFFICES OF DALE K. GALIPO**

/s/     *Dale K. Galipo*
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
*Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES

1

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby submit this demand that this action be tried in front of a jury.

DATED: May 7, 2025            **THE LAW OFFICES OF DALE K. GALIPO**

/s/    *Dale K. Galipo*
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
*Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES